### WANDO PHOSPHATE COMPANY v. GIBBON.

1. A, the owner of a phosphate mine, covenanted under seal with B as follows: A was to furnish the plant and B was to work the mine and receive $4.75 for every ton prepared for shipment and was "to mine not less than 2,000 tons within one year, and not less than 4,000 tons for each and every succeeding year until the mines are exhausted." B was also "to have the use of the houses now standing on the said lands" of A. *Held*, that there was nothing in this contract that required A to continue operations until the mine was exhausted, but a mere employment involving only the personal services of B, and giving to B no right to the possession after notice to quit.

2. If the contract was to continue until the mines were exhausted, B could not hold the property after demand by A for its possession, but his only remedy would be an action for damages for breach of contract.

Before FRASER, J., Charleston, July, 1887.

This was an appeal by plaintiff from the following judgment:

Under the code the only pleading on the part of a defendant in an action is a demurrer or an answer. This answer must contain all the defences, including those which are purely legal, as well as those which are equitable. In considering the sufficiency of an answer, therefore, the only question for the court is, whether in any aspect of the case, legal or equitable, the facts denied or alleged in the answer constitute a defence to the action, and is sufficient to constitute a defence to plaintiff's claim to recover against him.

The case has been argued with much ability, and I have been furnished by counsel with a large amount of authority bearing on the points at issue. It would require me to exceed any reasonable length for a Circuit decree if I attempted to discuss at length these interesting questions, and I must therefore confine myself to a very brief statement of my conclusions on the points I consider important in the case.

The contract set up in the answer is in writing and under seal, and signed by plaintiffs and defendants, and it contains mutual covenants. I therefore conclude that there is a sufficient consideration affecting both parties to it. I also conclude that so far as it affects land, all the requirements of the statute of frauds have been complied with.

It remains, then, to consider what is the proper construction of the contract, a copy of which is set out with the answer. By this contract the defendants have to dig, mine, wash, and deliver not less than 2,000 tons of rock within the first year, and not less than 4,000 tons in each and every succeeding year, "until the mines are exhausted." I am unable to adopt the suggestion of plaintiff's counsel that the obligation to mine 4,000 tons only extends to the amount mined in any one year during which plaintiff permits the mining to continue, and that plaintiff has therefore a right to require the defendants to discontinue the mining without the consent of the defendants. The obligation on the part of the defendants continues until the mines are exhausted, and that on the part of the plaintiff to pay for the rock continues in like manner "until the mines are exhausted." If I had to select words to express continuance of these mutual obligations until the "mines are exhausted," not for any one year,

but for every year while any available rock remained in the land to be mined, I know of no more appropriate form of words than those used in the contract. These mutual obligations can terminate only by mutual consent, or the complete exhaustion of the mines, that exhaustion to be settled in case of disagreement in a manner provided in the contract; a most remarkable provision, if either party could terminate the contract at will.

It is true that this contract binds the defendant to dig, mine, wash, and deliver the rock from plaintiff's land, but this does not constitute the defendants agents, employees, or servants of the plaintiff. Plaintiff has reserved no right to direct or control the time or conduct of the defendants. Their only obligation to each other is that of independent parties to a contract by which their duties are to be regulated.

I understand plaintiff's counsel to claim that, whatever may be the true construction of the contract in the particulars above referred to, it is only a personal contract, and that the contract gives no right to the defendants to remain on the land of plaintiff to dig, mine, and wash the rock against the will of plaintiff, and that if plaintiff sees fit to order the defendants to quit work under the contract, the only remedy left open for the defendants is an action for damages for the breach of the contract on the part of the plaintiff. If the plaintiff's claim in this respect is well founded, and the right of defendants to retain possession of the land and mine the rock can be terminated by a notice from the plaintiff, I do not see how the defendants can ever recover damages for a breach of contract. The defendants are entitled to be paid only for the rock delivered according to the terms of the contract, and this delivery, on plaintiff's theory, will never be possible.

I concede that, as a general rule, when a person covenants to do any particular thing, it is his business to see that all obstacles are removed; but when, as in this case, the only obstacle in the way is the consent of the other party to the contract, that consent must necessarily be assumed as one of the terms of the contract itself. In this case that consent is only to the performance of the only thing which the parties have agreed shall be done— the mining of the rock. It is one of those cases in which applies

the maxim, "*quando aliquis aliquid concedit, concedere videtur et id sine quo res uti non potest.*" If the conveyance of a tract of land carries with it a right of way over donor's land, when that right of way is absolutely necessary for its use and enjoyment, I see no reason why an agreement on the part of the plaintiff to pay for the rock on a certain tract of land, when mined and delivered, should not be accompanied in the same way with the right to enter the land and hold possession of it for the purpose of mining it, &c., because, without this right, the defendants cannot use and enjoy their right under the contract to demand and receive their pay for the rock mined and delivered. It seems to me that, if anything, this is a much stronger case ; because a failure to deliver not only means a loss of the $4.75 per ton for the rock, but a heavy liability for damages on the part of the defendants for a failure to deliver rock, and which, according to plaintiff's theory of this case, they no longer have any right to do.

It is not necessary to consider here whether the right claimed by the defendants is a lease, an easement, or a license. It is sufficient, if it exists. A parol license is revocable at the will of the licenser, but it is not revocable when expenses have been incurred, and it has become coupled with an interest. 3 *Kent*, 452. If this were a right merely under a verbal contract, express in its terms, and were only a license, it would, in this view, be irrevocable. See *Meetze* v. *Railroad Co.*, 23 *S. C.*, 1. I see no reason why a right, implied as one of the necessary incidents under a written contract under seal and on full consideration, should, as contended on the part of plaintiff, stand on no higher ground than a parol license not coupled with an interest.

The case of *Shaw* v. *Wallace*, 25 *N. J.*, 453, seems to be full to the point that such a right to enter and hold possession of another's land for mining purposes may be implied in a written contract, when not conveyed by any express words of the instrument. The indefinite time to which the right here claimed extends makes a more permanent interest than if a definite term of years were fixed. An indefinite term, like the period to which this contract runs, would make a freehold interest in land,

while a definite term of years would be only a chattel interest. 4 *Kent*, 26.

I therefore conclude that the defendants have a right clearly implied under the written agreement to hold possession of plaintiff's land and commit the acts complained of, and that the answer constitutes a complete defence to the action. It is understood that the complaint and answer state fully the case on the part of the plaintiff and the defendants, and that nothing can be accomplished by an amendment of the answer or complaint. The demurrer to the answer is therefore overruled, and the complaint is dismissed with costs.

Plaintiff appealed upon thirteen exceptions, which, as stated in appellant's argument, raised the following points:

1. His honor, in construing a written contract, erred in implying, first, an obligation on plaintiff to continue to employ defendants to mine its lands for an indefinite term; and, second, in implying from such implied obligation, as an incident to it, the right in defendants to hold possession of plaintiff's land and personal property against its will, to disturb its soil, dig up its phosphate rock, and use its plant in exclusion of the rights of the owner.

2. The contract to which the defendants refer as determining the rights of the parties gives them no right to enter and hold possession of plaintiff's land and to mine its phosphate rock, and his honor erred in so holding, and in holding that the answer constitutes a complete defence to the action.

3. The case of *Shaw* v. *Wallace* (25 *N. J.*, 453), relied on by defendants, and upon which the Circuit Judge bases his decision, is no authority for this case.

4. The Circuit Judge erred in holding that in so far as the contract in question affects land, all the requirements of the statute of frauds have been complied with.

*Messrs. Barker, Gilliland & Fitzsimons,* for appellant.

*Messrs. James Simons* and *Mitchell & Smith,* contra.

April 3, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The appellant being the owner of a certain tract of land situate in Charleston County, containing a deposit of phosphate rock, employed the defendants, respondents, to mine said lands under the following written agreement, to wit:

1st. That the said George E. Gibbon, jr., and E. J. Hanahan agree and contract to mine all the available phosphate rock on the lands of the Wando Phosphate Company, near Bee's Ferry, in Charleston County, in the State aforesaid, and deliver the same properly washed and weighed to the said company on board of lighters and vessels at the wharf of the company, situate on said land, at four dollars and seventy-five cents ($4.75) per ton for each and every ton of 2,240 pounds so mined, washed, weighed, and delivered, provided, that if no vessel is ready to receive the rock, the same shall be dumped on the wharf, or on the adjacent land, at the option of the company.

2nd. The said Wando Phosphate Company agree to furnish to the parties of the first part a washer, engine, boilers, a railroad of necessary length, and having a track three feet wide, with proper switches and frogs, twenty cars of usual size, mules, and whatever else may be necessary to constitute a plant suitable and proper for carrying on said mining operations, and shall pay to the said parties of the first part four dollars and seventy-five cents per ton for each and every ton of phosphate rock so mined, washed, and delivered, as provided for in the first clause of this agreement, said payment to be made weekly or monthly.

3rd. The said parties of the first part agree to furnish the necessary labor and to pay for the same, and also to feed the mules, and defray all the other expenses necessary to the mining, washing, and delivering of said rock, as hereinbefore provided for, keeping everything in order at their expense, damages other than usual wear and tear to machinery, engine, and boilers excepted.

4th. The said parties of the first part agree to mine not less than two thousand tons of phosphate rock within one year from the time the plant hereinbefore provided for has been turned over to them, and to mine not less than four thousand tons for each and every succeeding year until the mines are exhausted.

5th. It is mutually agreed that in case the said parties to these presents shall differ as to what is "available phosphate rock," as provided for in the first article, or what is necessary to constitute a plant suitable and proper for carrying on said mining operations, as provided for in the second article hereof, such difference shall be submitted to arbitrators, one to be appointed by

the party of the first part, and one by the party of the second part, with the right to said arbitrators, in case they should not agree, to call in an umpire, and the award of said arbitration shall be final and conclusive on said parties.

6th. The said parties of the first part are to have the use of the houses now standing on the said lands of the party of the second part.

In witness whereof the said parties have hereunto set their hands and seals on the day and in the year first above written.

(Signed)                  G. E. GIBBON, JR.,    [L. S.]
                          E. J. HANAHAN,         [L. S.]
                          F. B. HACKER,          [L. S.]
                          Pres. Wando Phos. Company.

This agreement was entered into on November 22, 1881, and after the work had been carried on for several years thereunder, the appellant, finding that they were suffering great loss on account of the decline in phosphate rock, on February 2, 1887, gave notice to the respondents that the work should be discontinued on and after February 5, when the property in possession of said respondents, including the lands, washer, railroad track, mules, and implements belonging to the appellant, should be delivered up. This notice was disregarded by the respondents who continued to hold possession of the property mentioned after said notice, and also after frequent other notices of the same kind continued to dig the soil and remove the rock. Whereupon the action below was commenced by the appellant, demanding judgment for damages in the sum of $30,000 for the alleged trespasses; and, further, that respondents be enjoined from the further continuance of said trespasses and injuries. The respondents, admitting most of the allegations in the complaint as to the character of the work, &c., denied that they were trespassers, and contending that they had performed, and were performing, their part of the contract above set out, interposed said contract as a defence to the action. The appellant demurred to respondents' answer, on the ground that it did not state facts sufficient to constitute a defence. This demurrer was overruled by his honor, T. B. Fraser, and the complaint ordered to be dismissed with costs.

The plaintiff has appealed upon thirteen exceptions. The main point raised, however, is, that his honor erred in holding that the respondents had the right to continue their work and

employment until the "mines were exhausted"; that such was the meaning and intent of the contract between the parties, and that appellant had no right to discontinue said work so as to make the respondents trespassers.    Error is alleged also to his honor in dismissing the complaint without motion, or notice of motion, to that effect, and on demurrer to the answer.    The other exceptions allege error more to the reasoning of his honor, leading up the holding suggested above, rather than to any principle of law directly involved.

We come now to the question : did his honor interpret correctly the contract between the parties ?    Was it a definite contract for the continuance of the work provided for therein until the mines should be exhausted, and if so, did it authorize the respondents to hold on to the property after notice to quit, thereby constituting a good defence to the charge of trespass ? There is no doubt that a party in the possession of the lands of another, acknowledged to be his, and of property like that mentioned here, using it, digging the soil, and removing the rock, &c., &c., would be a trespasser, unless he is in possession as lessee, under a contract of rent, under an irrevocable license, or by permission and consent.    It will be conceded, we suppose, that a party using the property of another, as it is admitted the defendants were using the property of the plaintiff here, to avoid being held responsible as a trespasser would be required to show that he stood in relation to the owner in one or more of the conditions mentioned above.

Now, was the contract under which the respondents held, and upon which they rely, either a lease, a contract of rent, a license coupled with an interest, or a permission to hold and use, as claimed ?    It was certainly neither of the first three, and therefore they may be dismissed without further remark.    The question then recurs, was it a permission, taking effect at the time of its execution, and at the beginning of the employment of the defendants, and to continue of force until the "mines were exhausted" ?    Were the terms used, to wit, "to furnish not less than 4,000 tons for each and every succeeding year until the mines were exhausted," as found in the fourth paragraph of the contract, intended to indicate the duration of the employment, and

so understood by the parties, or were they used merely to indicate the quantity of rock to be taken yearly from the mines while the mining continued, provided there was available rock present ?

We have felt great hesitation in reaching a conclusion on the first question, because, on the one side, if it was the purpose of these parties to fix definitely and positively a duration to their business obligations upon both sides, this certainly could have been done much more distinctly than by the phrase used. And besides, this phrase is found in a somewhat singular place in the contract, if such was its purpose. It is found in the fourth paragraph, which stipulates for the quantity of rock to be mined annually by the respondents, and seems to have been thrown in more for the benefit of said respondents than anything else, giving room for a decreased quantity, less than the 4,000 tons stipulated for, in case the mine should begin to run out, rather than to extend the contract to an indefinite period, to be measured and marked only by the exhaustion of the mine. And yet, on the other side, when the words employed are interpreted according to their ordinary and usual signification, there is ground for the position that the contract was to last as long as the mines furnished available rock to the extent of 4,000 tons per annum. But be this as it may, there is certainly no express formal provision in the contract obligating the plaintiff to continue the business of mining until the mines were exhausted, nor for any definite or fixed period. Nor do we think there is any necessary implication of such a result. It is true, that the defendants stipulated and agreed to mine not less than 4,000 tons of rock for each and every succeeding year *until the mines were exhausted.* And in another section of the contract the plaintiff stipulated to pay $4.75 for each ton mined and furnished, &c., &c., but it nowhere appears clearly that the plaintiff contracted to keep the business running, even at a ruinous sacrifice, until the mines were exhausted.

There are two English decisions found in 5 Adolphus and Ellis (N. S.), which are very similar to this, and which, we think, should control here. In the first case (*Aspdin* v. *Austin*, 5 *Adol. & El.*, *671) plaintiff agreed to manufacture for defendant

cement of a certain quality, with the materials, machinery, and implements to be furnished by the defendant, the defendant engaging to pay £4 weekly during the two years following the date of the agreement, and £5 weekly during the next year following, and also to receive plaintiff into partnership at the expiration of the three years. Each party bound himself in a penal sum to fulfil the agreement. It was held that the stipulations in the agreement did not raise an implied covenant that defendant should employ plaintiff in the business during three or two years, though defendant was bound by express words to pay plaintiff the stipulated wages during those periods respectively, if plaintiff performed, or was ready to perform, the condition precedent.

In this case the plaintiff was discharged before the expiration of the period mentioned, and he brought action for damages on account of the discharge. In delivering the opinion of the court, Lord Denman, C. J., said: "The breach here assigned by the plaintiff assumes that the defendant, at however great loss to plaintiff, was bound to continue his business for three years, but the defendant has not covenanted to do so. He has covenanted only to pay weekly sums for three years to the plaintiff. on condition of his performing what, on his part, he has made a condition precedent, and the plaintiff will be entitled to recover those sums, whether he performs that or not, so long as he is ready and willing, and offers to perform it, and is prevented only by the defendant from doing it."

The other case (*Dunn* v. *Sayles*, 5 *Adol. & El.*, \*687) was to the same effect, upon a similar contract. The court in these cases seem to have held that while the contract to pay the stipulated sums for the services to be rendered might be binding, if the plaintiff was ready and willing to perform them, and was prevented improperly by the defendant, yet that defendant could not be required to continue the business against his will, and to his great injury. In other words, that he had the right to dismiss his employee, and to discontinue his business at the peril of being held responsible for failure to comply with his contract to pay so much weekly, &c.

Now in the case before the court. As we have already said,

there is no distinct and positive contract on the part of the plaintiff, that the business of mining shall go on until its mines were exhausted, which the plaintiff has breached by dismissing the defendants, and by virtue of which contract the defendants can hold on to the property in question after notice to quit. The contract which plaintiff has breached, if any, is like that in the two cases above cited, to wit, a contract to pay the defendants the sums stipulated for the rock to be mined. But the breach of this contract, if any, does not entitle the defendants to continue in possession of the property. Mr. Wood says, "When a servant is discharged, whether rightfully or not (*Ross* v. *Pender*, 10 *S.* (Sc. 3rd. series), 301), he must leave peaceably and surrender to the master all property belonging to him, including a house, if he occupies it as a servant, and if he fails to do so, the master may forcibly eject him from the premises (*Seangall* v. *Crawford*, 2 *Mur.* (Sc.), 40 ; *Bertie* v. *Beaumont*, 16 *East*, 34) ; and the fact that the servant leaves quietly, without protesting against his discharge, cannot be construed as evidence of an acquiescence therein (*Champion* v. *Hartshorne*, 9 *Conn.*, 564; *McAllister* v. *Ogle*, 1 *Ir. Jur.* C. P. (N. S.), 313).; for it is his duty to leave peaceably, and he does no more than his duty by quietly departing." *Wood Mast. & Serv.* (2nd ed.), section 146.

In each of the cases in Adolphus & Ellis, above, the employee brought the action relying upon an alleged breach of the contract between the parties, that the employer had discontinued the work and discharged the plaintiff without cause before the expiration of said contract. The court held that there was no covenant either express or implied that the work should continue, and therefore the action could not be sustained, saying that the breach assigned should have been the failure to pay the stipulated wages during the specified time, for which there was a contract. So here, the defendants interposed the agreement, setting up the defence that they had the right thereunder to continue the work until the mines were exhausted. The Circuit Judge sustained this defence, by overruling the demurrer. We think this was error, for the reason, like the cases cited *supra*, there was no contract for the continuation of the work for a definite or an indefinite period. Whether there was a contract that defendants

should be employed to the extent of furnishing 4,000 tons of rock per annum until the mines should be exhausted, at $4.75, per ton is not one of the issues in the pleadings, and is not therefore directly involved.

But assuming that it is, and that such a contract was made, and that being under seal, based upon mutual promises and stipulations and in every way founded upon a sufficient legal consideration, it is a valid contract, binding and obligatory upon both parties, and further that it has been breached—what is the remedy, and what is the relief to which the defendants are entitled ?  The remedy for a breach of contract depends entirely upon the nature and character of the contract breached.  If it be a contract by which the party of the second part has acquired the possession of property real or personal, as a purchaser, lessee, or otherwise, of a defined interest, as a term of years, &c., or a license coupled with an interest irrevocable, we suppose that he could retain possession.  Or if it be a contract which the courts would specifically enforce according to its terms, he might obtain such enforcement.  Or if it be a contract the breach of which sounds in damages only, his remedy would be an action for damages, and his relief a recovery of such damages as the facts required.

In the first class he could retain possession, because his possession is founded upon title.  In the second, if in possession, he could still retain it, because the courts would enforce a specific performance, if he was out of possession, by putting him in possession.  But in the last class his rights rest in contract which has given him no defined interest in possession, but simply an agreement to have a certain thing done or not done, the violation of which entitles him, not to have the agreement fulfilled specifically, but to damages in case of a failure to comply.  Take the case of an overseer, an agent or clerk, employed for a certain number of years, and dismissed without sufficient cause before the expiration of the contract; could he still perform the stipulated duties in defiance of the dismissal of the employer, *per force ?* Would this be his legal remedy ? or would not an action for damages be the legal and proper course?

We think the respondents occupied the relation of ordinary

laborers to the appellant—employees to do a certain work—their possession being his possession, and that possibly they were employed to do this work "until the mines were exhausted," and that the appellant has broken this employment at the peril of being subjected to pay such damages as the respondents may have sustained ; but we do not think that the respondents bought any right or title to the property in question, nor was the contract such a contract as the Court of Equity would specifically enforce, and in that way authorize them to hold to their possession.   But it is a contract sounding in damages, for the breach of which their only remedy is an action for damages, and that since the service of notice to quit upon said defendants their possession has been without authority, and therefore the action below is maintainable, it being substantially an action for exclusive possession on the part of the appellant.   See the principle laid down by Wood on Master and Servant, quoted above, extracted from the cases which he cites *supra.*

The main ground of our conclusion is, that even admitting the contract to have been a contract until the mines were exhausted (which question we do not adjudicate decisively), yet it was a contract involving personal services only, and gave no title to the property either real or personal, or any right to possession or use as against the true owners, and therefore that defendants could not continue to hold in defiance of the demand of the appellant, the admitted owner.   See *Wood on Master and Servant* (2nd ed.), section 155 :  "When a servant occupies a dwelling house as accessory to the performance of his duties, he is not a tenant, and if he is discharged, his right to possession ceases, and he must surrender, or he may be forcibly ejected.   And when the servant is discharged, the right of the master to enter does not depend upon the question whether he has been rightfully or wrongfully discharged, but exists in the one case as well as in the other, the master incurring the peril of paying damages, if the discharge is wrongful.   But the right to expel the servant from the house exists, whether he had good cause or not," their remedy, if they have any, being as we have said, an action for damages, for breach of contract. If they were out of possession, they certainly could not be put into possession by a specific enforcement of the

agreement, for the reason that the contract was neither a contract for the purchase of land, nor of anything else having a special value over and above an ordinary pecuniary one, giving rise to equity jurisdiction in such cases. And being in possession, they cannot hold possession, for the same reason.

Our judgment is, that the demurrer should have been sustained in so far as it negatived the answer as a bar to the action, and that the case should have proceeded on the claim of appellant for damages, if any, and his right to the restraining order prayed for.

The conclusion above renders a discussion of the other questions raised unnecessary.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the case be remanded.